UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIM BRADLEY, ) | |
| ) | |
| Plaintiff, ) | CASE NO. CV 04-1758 MJB |
| ) | |
| v. ) | |
| ) | MEMORANDUM |
| JO ANNE B. BARNHART, ) | OPINION |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income (SSI) disability benefits under Title XVI §§ 42 U.S.C. 405 (g), 1383 (c) (3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On March 6, 2001, Plaintiff filed an application for disability insurance benefits ("DIB"). Tr. 379. Plaintiff protectively filed an application for Supplemental Security Income (SSI) disability benefits alleging that he became disabled on November 15,1998, due to low back problems, fibromyalgia, myositis and depression. Tr. 372. Plaintiff's claim was denied initially and on reconsideration. Tr. 38, 41, 45, 47-48, 376. On February 4, 2003, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Ruperta Alexis. Tr.18. On July 30, 2003, the ALJ issued a decision denying benefits.

Tr. 18-31. Plaintiff timely requested review by the Appeals Council and submitted additional evidence to the Council. Tr. 7-10. On October 18, 2002, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. Tr. 7-9. Plaintiff timely filed his appeal in this Court.

## II.  THE PARTIES' POSITION

Plaintiff asks the Court to reverse the Commissioner's decision and award benefits, or in the alternative, remand this matter for a new hearing. He argues that the ALJ erred by: 1) failing to provide clear and convincing reasons supported by specific facts for rejecting Plaintiff's testimony of pain and related symptoms; and 2) rejecting the opinions and medical source statements of treating physicians. Defendant responds that the Commissioner's decision is supported by substantial evidence and is free of legal error, and therefore should be affirmed.

## III.  STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d. 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.
 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F. R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the ALJ will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the ALJ evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at §§ (e), (f). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (g)(1); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the ALJ finds that the claimant is unable to perform other work, then the claimant is found disabled.

## V.  BACKGROUND

Plaintiff was 40 years old at the time of the hearing before the ALJ. Tr. 30. He has a GED and an honorable discharge from the U.S. Air Force, having worked as a jet

engine mechanic until 1983. Tr. 90, 422. Until 1996, he performed auto body "paint and prep and metal prep." Tr. 422. His previous employment also consisted of work as a grinder, a sandblaster, and a warehouse worker. Tr. 19.

Plaintiff was injured when working for Genie Industries while maneuvering a 300 pound tire onto the hub of a telescopic boom. Tr. 423-425. Prior to the alleged onset of disability, Plaintiff tried to return to work while receiving treatment for continued back pain. Tr. 155-159. While continuing to work, Plaintiff still experienced lumbar strain and finally he quit working at Genie Industries. Tr. 185. At that time his treating physician, Kyle Oh, M.D., placed him on permanent medium duty restrictions. Tr. 185.

## VI. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity after the date the alleged disability began. Tr. 19. At step two, the ALJ found that Plaintiff suffered from fibromyalgia, anxiety, and adjustment disorder. *Id.* However, at step three, the ALJ found that Plaintiff remains independent in his self care and supervised three school aged children. Moreover, she found that Plaintiff's reports that "he socializes as often as possible" and that his daily activities suggest that he can complete tasks in a timely manner. She found that he continues to drive, watch television and play cards, which suggested that his concentration is largely in tact. With no evidence of decompensation, she concluded that plaintiff had no marked functional limitations. Thus, she found that his impairments do not meet the listing under section 12.00, either singly or in combination. Tr. 20.

At step four Judge Alexis determined that plaintiff could *not* return to work or perform the requirements of his past relevant work. Tr. 20-27. She found that Plaintiff retained the residual functional capacity to like or carry 20 pounds occasionally and 10 pounds frequently. Tr. 27. Additionally, she determined that he can stand or walk or six for six hours in an eight hour period, and perform repetitive tasks. Lastly, she concluded

MEMORANDUM OPINION - Page 4

that he should have no more than minimal interaction with the public, co-workers or supervisors. Tr. 27.

To reach this determination, Judge Alexis identified each medical source and what weight she assigned to each. She assigned significant weight to the medical evidence of exertional limitations identified in the opinions of Calvin Jones M.D., Kyle Oh M.D., Dean Ricketts M.D., and Richard E. Marks M.D. Tr. 27. However, both Kevin Morris' M.D., and Scott McAffee's, M.D., opinions were given little or no weight, respectively, by the ALJ. Concerning mental impairments, the ALJ assigned significant weight to the opinion of David B. Jarvis M.D., that the depressive disorder created little or no limitation regarding plaintiff's employment. Tr. 28.

Finally, at step five, relying upon the vocational expert, Paul Tomita, who testified to thousands of jobs in the national economy for assemblers, cashiers, and surveillance system monitors, all sedentary and unskilled, Judge Alexis concluded that Plaintiff was not under a disability (citing 20 CFR §§404.1520(f) and 416.920(f)). Tr.29. Accordingly, she found that Plaintiff was not entitled to DIB or SSI benefits. *Id.*

## VII. DISCUSSION

A  <u>ALJ's Assessment of Plaintiff's Credibility</u>

Plaintiff argues that the ALJ erred in rejecting his subjective testimony regarding his pain and related symptoms by not providing clear and convincing reasons. Before rejecting a plaintiff's testimony, the ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). The first step requires Plaintiff to produce objective medical evidence of an underlying impairment. The second step requires a showing that the impairment could reasonably be expected to produce the alleged symptoms. Id. at 1282. *Id.*

In the present case, Plaintiff met this two-pronged burden in the record with medical evidence of his fibromyalgia diagnosis, beginning with medical chart notes and

testing in September 2001. Tr. 237, 238, 241. Additionally, the ALJ here did not explicitly find malingering.

Then if the ALJ rejects a plaintiff's symptom testimony, the ALJ must make specific findings, stating clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). In weighing a claimant's credibility, the ALJ may consider, Plaintiff's reputation for truthfulness, inconsistencies either in testimony or between testimony and conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms complained of. *Rollins v. Massanari*, 261 F.3d 853,856 (9th Cir 2001).

The ALJ gave the following reasons for discrediting Plaintiff's testimony:

1) Several doctors of record commented on the claimant's inconsistent presentation, referring to Dr. Jones characterization as "some symptom magnification and avoidance behavior;"
2) Dr. Zietek found that Waddell's signs were positive;[1]
3) Dr. Zietek noted plaintiff's anger toward his employer appeared to contribute greatly to his symptomatology and that he was not interested in returning to work;
4) Dr. Nelson noted claimant demonstrated no visible discomfort;
5) Dr. Kendrick opined that his strength was difficult to test since he seemed not to give it full effort and that he was seeking disability and had an unreliable exam;
6) Dr. Jarvis concluded that there was an exaggerated quality to the claimant's posture, gait, and tremor and with the cognitive portions of the evaluation.
7) Inconsistencies between Plaintiff's's self-report and what he told Dr McAfee regarding anxiety while driving;
8) Inconsistencies in failing to seek treatment for his left leg following surgery.
9) Inconsistencies in his testimony regarding his ability to walk only 20 to 30 feet before resting and his normal gait on physical examination;

MEMORANDUM OPINION - Page 6

> 10) Daily activities also presented inconsistencies with his alleged debilitation such as, his active social life, his independent personal care and ability to make meals, his ability to daily supervise his own children "(which entail medium level work citing to Dictionary of Occupational Titles), and
> 11) His earning record reflecting a lack of strong desire to work.

This Court finds these reasons clear and convincing. Moreover, these reasons illustrate that the ALJ's assessment did not hinge upon daily activities alone but a composite of Plaintiff's inconsistencies over time. By this Court's review, the record also raises an issue of secondary gain, though the ALJ never goes that far in her credibility assessment of Plaintiff. The ALJ's reasons for discrediting Plaintiff's testimony meets the *Dodrill* standard.

B. <u>Rejecting the Treating Physician's Opinions</u>.

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Clear and convincing" reasons are also required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). See *Morgan v. Commissioner of the Social Security Administration,* 169 F.3d 595,599 (9th Cir. 1999). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *See Lester*, 81 F.3d at 830; *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).

Plaintiff argues the ALJ also erred when she rejected McAfee's opinions as reliant upon the claimant's self-reporting and concluded that Plaintiff's daily activities far exceeded the functional restrictions opined by McAfee. Dkt. No 10, p. 9. Plaintiff urges

MEMORANDUM OPINION - Page 7

the Court to agree that the ALJ ignored medical evidence after Fall of 2001. He points to Plaintiff's treatment for sixteen months for fibromyalgia, beginning with Susan Friesen, M.D, and Pedro E. Trujillo, M.D., who made objective findings of fibromyalgia, stating "Plaintiff has 'tenderness in all points,' except behind his knees." Tr. 241, 237. Dkt. No. 9, p10. Many reports by Scott McAfee, M.D., show continued fibromyalgia follow-up care as well as his opinion of Plaintiff continuing disability. Tr. 223-228. In response, the Commissioner argues that the ALJ need not recite "magic words" in her decision, but need only state *enough* so that a reviewing court can draw specific and legitimate inference from the findings. Dkt. No 12, p. 10-11.

      Much was said in the ALJ's determination of Plaintiff's residual functional capacity, including an assessment Dr. McAfee opinions. In her findings, Judge Alexis specifically states she places "no weigh"(sic) to his conclusions because they are inconsistent with the objective evidence and with Plaintiff's daily activities which she found "far exceed functional restrictions opined by Dr. McAfee." She specifically noted that Dr. McAfee appeared not to acknowledge such inconsistencies in Plaintiff's self-reports, thereby rendering his opinion of no value. She emphasized in her findings Plaintiff's inconsistent behaviors when she compared his testimony about his daily activities to Dr. McAffe's opinions of disability. In this Court's view her analysis did not ignore the opinion of treating physician Dr. McAfee; but rather, she found his conclusions did not embrace the inconsistencies she found more troubling. *Magallane*s, 359 F.3d at 1193. This was not error because the record contains clear and convincing reasons to support the ALJ's findings.

//
//
//
//

MEMORANDUM OPINION - Page 8

## VIII. CONCLUSION

Accordingly, the Commissioner's decision was based upon substantial evidence and free of legal error. Accordingly, the undersigned AFFIRMS the Commissioner's decision.

DATED this 30th day of September, 2005.

/s/ M J Benton
Monica J. Benton
United States Magistrate Judge

MEMORANDUM OPINION - Page 9